UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

WILLIAM K. BELLERIVE, JR., )
)
    Plaintiff, )
)
)
v. ) No. 3:10-CV-175
) (VARLAN/SHIRLEY)
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
    Defendant. )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13 and 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 and 16]. Plaintiff William K. Bellerive, Jr., seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On July 14, 2005, the Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income, claiming a period of disability which began September 5, 2004. [Tr. 130, 133]. After his application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On March 5, 2008, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 360-81]. On March 26, 2008, the ALJ found that the Plaintiff was not disabled.

The Appeals Council ordered a remand because the audio recording from the March 5, 2008, hearing was inaudible, and thus, the record was incomplete. A second hearing was held November 12, 2008. [Tr. 382-403]. The ALJ rendered an unfavorable decision on May 29, 2009. [Tr. 13-29]. The Plaintiff filed a timely request for review on July 14, 2009, and the Appeals Council denied the Plaintiff's request for review on February 23, 2010. Thus, the decision of the ALJ became the final decision of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2009.

2. The claimant has not engaged in substantial gainful activity since September 5, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: organic mental disorder; affective disorder; anxiety-related disorder[;] and substance addiction disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to performing simple, repetitive non-detailed tasks where co-worker and public contact is casual and infrequent, where supervision is direct and non-confrontational, and where changes in the workplace are infrequent

and gradually introduced.

 6. The claimant is capable of performing past relevant work as a sanitation collector. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

 7. The claimant has not been under a disability, as defined in the Social Security Act, from September 5, 2004 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 17-22].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

3

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

**III.   STANDARD OF REVIEW**

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d

270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV.     ANALYSIS

On appeal, Plaintiff argues that the ALJ's disability determination is not supported by substantial evidence. The Plaintiff contends the ALJ erred by: (A) not acknowledging a note that the Plaintiff's condition prevents him from working; (B) not explaining the weight given to a functional capacity assessment in November 2008; (C) "misrepresenting" a consulting expert's assessment of Plaintiff's mental functioning;[1] and (D) discounting Plaintiff's allegations. [Doc. 14 at 23].

The Commissioner responds that the Plaintiff improperly argues that the ALJ must address every single piece of evidence in the record. [Doc. 16 at 1]. The Commissioner cites the Court to Walker v. Sec'y of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989), in support of this

---
[1]The Plaintiff's argument addresses the weight afforded to the reviewing source and examining source in the record. The body of the argument does not develop an argument regarding misrepresentation.

position. The Commissioner maintains that the Plaintiff has isolated two single-page forms as examples of evidence that the ALJ did not address, and the Plaintiff cannot identify the author of one of these forms. The Commissioner contends that the Plaintiff has not presented evidence that he was disabled during the relevant period. [Doc. 16 at 2].

A. **Treatment Notes for Peninsula Opining on Plaintiff's Employability**

The Plaintiff's testimony at both of the hearings in this case and the medical evidence in the record indicates that he made regular visits to Pennisula, a mental health facility, during the alleged period of disability. In a Medical Progress Note, a two-page form of short answers and check-lists used to review a visit, an unidentified person, who signed on the "MD Signature" line, stated that the Plaintiff was "no[t] likely employable at this time." [Tr. 221]. This Medical Progress Note was dated February 7, 2007. The Plaintiff alleges that the ALJ erred by not acknowledging the opinion or explaining the weight afforded to it. [Doc. 14 at 15].

The weight afforded to medical opinion evidence is governed by 20 C.F.R § 416.927. In pertinent part, 20 C.F.R. § 416.927 explains to applicants:

> We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

20 C.F.R § 416.927(e)(1); 20 C.F.R. 404.1527(e)(1).

Social Security Ruling 96-5p is meant to "clarify Social Security Administration policy on how [it considers] medical source opinions on issues reserved to the Commissioner, including . . . whether an individual is 'disabled' under the Social Security Act." Soc. Sec. Rul. 96–5p, 1996 WL 374183 at *1 (July 2, 1996). For purposes of SSR 96–5p, "medical opinions" are defined as

7

"statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s)." 1996 WL 374183 at *2. Though the instant opinion is not a medical opinion, the Court of Appeals for the Sixth Circuit has stated that "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 272 (6th Cir. 2010).

In regards to the unidentified signature, other courts within this Circuit have found that an ALJ's decision to afford little weight to such opinions was supported by substantial evidence. For example in Phipps v. Astrue, 2011 WL 336240(M.D. Tenn. Jan. 31, 2011), the court held that, "[b]ecause the medical source statement was unsigned and no objective testing was submitted with it, the ALJ properly accorded it little weight." Id. at *7.

In this case, the ALJ did not discuss the statement contained in the Medical Progress Note dated February 7, 2007, or state the weight afforded to the statement about the Plaintiff's ability to work contained therein. The Court notes that the referenced "opinion" is contained in a handwritten narrative in the Medical Progress Note, which itself is one page of approximately one hundred pages of records and reports from Peninsula.[2] Plaintiff has not cited the Court to a case, statute, or Social Security ruling requiring that the ALJ discuss each individual piece of evidence or every line of every piece of evidence.

As this Court and other courts within the Circuit have concluded, the ALJ is not required to discuss each piece of evidence found in the record. See McLean v. Comm'r of Soc. Sec., 360 F.

---

[2]The statement is actually, "no likly [sic] employable at this time," and the preceding portion of the Medical Progress Note simply indicates "reduced concentration, mood unstable, with irritability and racing thoughts." [See Tr. 221].

8

Supp. 2d 864, 869 (E.D. Mich. 2005); Overbay v. Astrue, 2011 WL 607389, *2 (E.D. Tenn. 2011) (Mattice, J.). This principle is especially applicable where, as in this case, the ALJ did find that the Plaintiff suffered from the mental disorders for which the Plaintiff was seeking treatment — in this case, a mental impairment, organic mental disorder, affective disorder, anxiety related disorder and substance addiction disorder [Tr. 17], which required restrictions be placed on Plaintiff's ability to engage in work activity. The ALJ ultimately found, however, that these mental impairments did not significantly diminish the Plaintiff's residual functional capacity to the point that he could not perform any work available in the national or local economy.

Moreover, the Plaintiff does not contend, nor can the Court find that: (1) the ALJ would likely give this statement any weight, much less controlling weight, given its shortcomings or (2) even if the ALJ gave the statement additional weight, the additional weight would have directed or resulted in a finding of disability, given that the opinion falls within the scope of decision reserved for the ALJ.

Acknowledging and discussing this statement within the ALJ's decision would have been the best practice and would have clarified the consideration the ALJ gave the statement. However, to require a remand, where it is unlikely to have any causal effect on the ALJ's determination, would both improperly delay the eventual rulings in this matter and would be tantamount to putting form over substance. The Court, like other courts in this Circuit, is disinclined to waste resources in that fashion. See, e.g., Slick v. Comm'r of the Soc. Sec., 2009 WL 136890, *3 (E.D. Mich. 2009) (declining to elevate form over substance where a "remand would likely produce little more than an added sentence"); Hargrove v. Astrue, 2011 WL 741983, *7 (N.D. Ohio 2011)("While the Court agrees . . . that the Social Security Act should be liberally construed, the Court must put substance

9

before form.")

Accordingly, the undersigned finds that the Plaintiff's allegation of error as to the opinion about the Plaintiff's employability is not well-taken.

## B. Tennessee Clinically Related Group (CRG) Form

In a somewhat similar argument, the Plaintiff argues that the ALJ erred by not explaining "the weight given to the assessment of November 2008." [Doc. 14 at 15]. The majority of the Plaintiff's argument on this point is devoted to citing case law and statutory provisions. [Doc. 14 at 16-17]. The Plaintiff, however, includes one paragraph applying these principles to the instant case, and states, "The Decision acknowledges a November 20**06** opinion from a non-acceptable medical source that assessed Plaintiff with marked limitations in areas of interpersonal interaction; concentration, persistence, and pace; and adaption to change. (Tr. 20; cf. 243)." [Doc. 14 at 17 (emphasis added)]. Thus, while the Plaintiff initially references a November 2008 opinion, he then states that the ALJ erred in his treatment of an opinion rendered in November 2006. The only citation to the record contained in Plaintiff's argument is to the Tennessee Clinically Related Group (CRG) Form completed November 9, 2006, so the Court will presume that this form is the "opinion" with which the Plaintiff takes issue.

The CRG Form contains a section entitled "Functional Assessment," in which Plaintiff's activities of daily living are said to be moderately limited and his interpersonal functioning ability is said to be markedly limited, as is his ability to concentrate, perform tasks, keep pace, and adapt to change. [Tr. 243]. In the space provided for evaluating the severity and duration of these impairments, the "rater" has stated "Yes." [Tr. 243]. The "rater" is identified as Melody Isben; the Plaintiff has not directed the Court to any evidence of Ms. Isben's qualifications as a medical source

10

or other source.

The ALJ discussed the functional ratings submitted by Ms. Isben in his decision. Specifically, he stated, "In November 2006, an assessment showed activities of daily living were moderate due to problems with cleaning; marked interpersonal functioning due to social isolation, and concentration, task performance and pace due to his limited ability to concentrate, and adapt due to problems with change." [Tr. 20 (citing the CFR Form)]. The ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but they were not credible to the extent they were inconsistent with finding that the Plaintiff could perform simple, repetitive non-detailed tasks where co-worker and public contact was casual and non-frequent and supervision was direct and non-confrontational and where changes in the workplace were infrequent and gradually introduced. [Tr. 19-21].

In making this determination, the ALJ explained that he had given great weight to the opinion of the DDS reviewing physicians and had given great weight to the opinion of the consulting examining psychologist, except the finding that the Plaintiff had marked limitations in his ability to adapt.[3] [Tr. 21 (citing opinions of Horace F. Edwards, M.D., and John E. Porter, M.S., Tr. 303-26)]. The ALJ noted, "One would not reasonably anticipate that a person who experiences such reported mental limitations such as sever depression and anxiety, to be able to tolerate the mental demands, the level of concentration, or the amount of social interaction, necessary to perform many of [his] activities." [Tr. 21]. The ALJ explained that the Plaintiff demonstrated he possessed adequate social skills, reported he got along well with others, maintained an ongoing eight-year relationship with his

---

[3]The Court will address the consulting examining physician's opinion below, as the Plaintiff has made a separate allegation of error in regards to his opinion.

girlfriend, was able to concentrate for several hours a day, could read and comprehend, and had not experienced episodes of decompensation. [Tr. 21]. The ALJ stated that he was, therefore, "persuaded that, while the claimant's mental impairments affects his ability to function, they do not significantly erode his occupational base that he can perform no work activity despite some decreased casual mental functioning episode." [Tr. 21].

The Plaintiff alleges that the ALJ did not explain the weight afforded to the opinions contained in the CFR Form. The Court finds that this argument is not well-taken. The ALJ explained that he afforded weight to the CFR Form by stating that it and other medical treatment notes had been discounted to the extent they were inconsistent with the residual functional capacity assessment. The ALJ further explained that he had afforded great weight to the opinion evidence in the record and that he had considered the functional ability the Plaintiff demonstrated in his testimony and his appearance. There is no evidence in the record to demonstrate that Ms. Isben was a treating physician, or any other source that would require more in-depth discussion or greater deference. There is no evidence of a history of frequent or ongoing treatment by Ms. Isben, Ms. Isben's ratings do not contain objective findings making them more supportable, there is no evidence that she specialized in the areas of diagnose in which she offered opinions, and her opinion is inconsistent with the evidence of record, as noted by the ALJ. See 20 C.F.R. § 404.1527(d), § 416.927(d).

Accordingly, the undersigned finds that the Plaintiff's allegation of error as to the opinions contained in the CFR Form completed in November 2006 is not well-taken.

**C.     The Opinion of the Examining Source and the Reviewing Source**

The Plaintiff also alleges that the ALJ erred in his treatment of examining and reviewing sources. The Plaintiff devotes the majority of his discussion of the instant error to citing cases and statutory provisions, including *inter alia* 20 C.F.R. Pt. 404, Subpt. P. App'x 1, § 12.00, 20 C.F.R. § 404.1520(c)(4). In applying these provisions to the ALJ's treatment of the consulting expert's opinion in this case, the Plaintiff argues:

> The Decision states that the ALJ gave great weight to the C.E.'s opinion, yet the ALJ found that Plaintiff predominantly has mild-to-moderate limitations. (Tr. 18, 20). The Decision states the C.E. classified Plaintiff's limitations as moderate "at times." (Tr. 20). This leaves the presumption that at other times Plaintiff's limitations would be marked, thereby rendering him unemployable.
> . . . .
> The Decision does not explain what it means by its interpretation of the C.E.'s assessment and does not explain why the ALJ adopted the assessment of a non-examining source over the C.E. These explanations are necessary for a proper review of the Decision. Accordingly, the Decision should be remanded as a matter of due process.

[Doc. 14 at 19-20]. The Plaintiff neither identifies the consulting examiner by name, nor cites any portion of the record, other than the ALJ's decision. Because the Plaintiff cites the portion of the ALJ's decision citing the examination conducted by John E. Porter, M.S., the Court will presume that the Plaintiff contends Mr. Porter's opinion was not properly addressed.

13

Mr. Porter examined the Plaintiff on February 15, 2006.[4] He found the following limitations:

> A. Ability to Understand and Remember: The claimant's ability to understand and remember at this time appears to be at least moderately limited because of his bipolar disorder, his ADHD and his anxiety.
>
> B. Ability to Sustain Concentration and Persistence: The claimant's ability to sustain concentration and persistence appears to be at least moderately limited at this time because of his bipolar disorder, his attention-deficit/hyperactivity disorder and his anxiety.
>
> C. Social Interaction: The claimant's social interaction appears to be at least moderately limited at this time because of his bipolar disorder, his attention-deficit/hyperactivity disorder and his anxiety disorder.
>
> D. Adaptation: The claimant's overall adaptation appears to be moderately to markedly limited because of his bipolar disorder, his attention-deficit/hyperactivity disorder, his anxiety disorder, and his probable borderline intellectual functioning.

[Tr. 326].

The ALJ explained that he gave great weight to Mr. Porter's opinion except to Mr. Porter's opinion that the claimant had marked limitation in his ability to adapt. The ALJ noted, "He adapted

---

[4]The Court will discuss the Plaintiff's credibility below, but will note that Mr. Porter's summary of the Plaintiff's medical and social history contrasts with the Plaintiff's testimony at the hearing held March 5, 2008, on many points. For example, Plaintiff indicated that he thought he had quit both of his last two carpentry/construction jobs. [Tr. 323]. In contrast, he indicated at the hearing that he was laid off, though he noted he might not have been able to continue in the position. [Tr. 367]. The Plaintiff reported to Mr. Porter that "he [slept] too much and [] sometimes, he [would] sleep 16 to 18 hours a day." [Tr. 324]. In contrast, he reported to the ALJ that he had problems sleeping. [Tr. 375]. He laid down at eight or nine and did not go to sleep until 2:00 a.m.; he estimated that he got four hours of sleep a night. Finally, the Plaintiff indicated to Mr. Porter that he only watched his young children occasionally, but he reported to the ALJ, that he regularly watched his children. [Tr. 372]. While the Court acknowledges that the Plaintiff's hearing before the ALJ took place almost two years after his visit with Mr. Porter, the Plaintiff neither explained that his conditions had changed in these two years nor acknowledged the differences in his history.

14

to the hearing process including the hearing, and to the consultative examiner, which showed his ability to adapt to change and unknown adventures." [Tr. 21]. The ALJ found that the residual functional capacity finding accommodated Mr. Porter's opinion, with the exception of the adaptation finding. [Tr. 21].

As stated above, the Plaintiff invites the Court to presume that, based upon the findings above and Mr. Porter's use of the phrase "at least moderately limited," the Plaintiff's limitations would be marked at times, "thereby rendering him unemployable." The Court declines to do so. The limitations found by Mr. Porter do not direct a conclusion that the Plaintiff could not be employed, nor did Mr. Porter indicate that the Plaintiff would be unemployable.

Though the Plaintiff did not complete certain exercises like serial 7s, Mr. Porter found that he was able to complete serial 3s, could complete six numbers presented serially, was able to recall two of three words presented after five minutes. [Tr. 323]. Mr. Porter stated that the Plaintiff's "thinking appeared to be organized, logical, concrete, and goal-directed." [Tr. 323]. Mr. Porter found the Plaintiff's attention span to be poor, but he did not indicate that this deficit would make the Plaintiff unemployable. Mr. Porter found that the Plaintiff's social skills were "adequate," and Mr. Porter noted that he "did relate fairly well to the examiner and he does appear to have the ability to get along with others." [Tr. 325].

After reviewing Mr. Porter's findings along with the ALJ's residual functional capacity determination, the Court finds that the ALJ incorporated Mr. Porter's findings and his decision not to include the adaptation limitation is supported by substantial evidence and adequately explained.

The Plaintiff also alleges that the ALJ did not adequately explain his reasons for crediting "a non-examining source" over Mr. Porter. Again, the Plaintiff has failed to identify who the non-

15

examining source, but based upon the evidence in the record, the Court will presume that the Plaintiff refers to Horace F. Edwards, Ph.D. After reviewing the Plaintiff's medical records on February 27, 2006, Dr. Edwards found that the Plaintiff could: understand, remember, and carry-out simple low-level instructions; sustain attention and concentration, keep a schedule, maintain attendance, and complete a workweek; work with and around others, including the general public, but would do better dealing with things rather than people; accept criticism with occasional difficulty; handle changes in work setting; and set realistic goals without significant emotional difficulty. [Tr. 305].

As a rule, the ALJ "must explain in the decision the weight given to the opinions of a state agency medical or psychological consultant," unless a treating source's opinion is given controlling weight. 20 C.F.R. §§ 416.927(f)(2)(ii), 404.1527(f)(2)(ii).

In this case, there was no treating source opinion to which to give controlling weight. Thus, the ALJ explained the weight afforded to Mr. Porter, which is supported by substantial evidence given Mr. Porter's specialization and the evidence in the record contradicting his opinions. The Plaintiff has not demonstrated that Dr. Edwards's opinions were credited "over" Mr. Porter, as the ALJ's RFC determination includes both source's limitations, with the exception of Mr. Porter's finding that the Plaintiff's ability to adapt was markedly limited. The ALJ adequately explained the weight he afforded to Dr. Edwards's opinion as well, and his decision to afford great weight is also supported by Dr. Edwards's specialization and the evidence in the record supporting Dr. Edwards's opinions. The ALJ did not err in either his explanation of the weight afforded to Mr. Porter or Dr. Edwards's opinions.

16

Accordingly, the undersigned finds that the Plaintiff's allegation of error as to the opinions of Mr. Porter, the examining source, and Dr. Edwards, the reviewing source, is not well-taken.

**D.     The Credibility Determination**

Finally, the Plaintiff alleges that the ALJ erred in his decision to discount the Plaintiff's credibility. [Doc. 14 at 19]. The Plaintiff takes issue with the ALJ's citing daily activities in support of his decision to discount the Plaintiff's credibility, and specifically, the Plaintiff cites the Court to a statement by Tina Ball, the Plaintiff's girlfriend, that he no longer reads and disputes the quality of his contact with friends and family. [Doc. 14 at 20-21]. The Plaintiff also contends that the ALJ should not have relied up the Plaintiff's appearance at the hearing and should not have referred to recent mental health records that indicated improvement. [Doc. 14 at 21].

The Commissioner notes that the ALJ's finding regarding credibility is entitled to significant deference. [Doc. 16 at 13 (citing Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003)]. The Commissioner argues that the Court should resist the Plaintiff's suggestion that it re-weigh the evidence of credibility. [Doc. 16 at 14].

As the Plaintiff notes, in White v. Commissioner of Social Security, 312 Fed. App'x 779 (6th Cir. 2007), the Court of Appeals for the Sixth Circuit found that the ALJ did not explain how the objective evidence in the record was inconsistent with the plaintiff's subjective complaints. Id. at 789. In White, for example, the ALJ noted that the plaintiff was teaching his sons to do yard work, but the Court of Appeals found that the plaintiff was actually supervising his sons as they performed the work that he could no longer complete. Id. The Court of Appeals found that the ALJ mischaracterized the plaintiff's testimony.

17

In this case, the ALJ reviewed the Plaintiff's self-reporting, in which the Plaintiff reported that he watches his children, left his last job due to company cut-backs, watches television for several hours per day, performs household chores, but experiences high and low moods that prevent him from working. [Tr. 20-21]. This review of daily activities is consistent with the Plaintiff's testimony at the hearing held March 5, 2008,[5] though the Plaintiff's testimony changed eight months later, after the ALJ issued his decision and the case was sent back for lack of a second hearing, with proper audio recording.[6]

In support of his allegation of error, the Plaintiff cites the Court to a Function Report [Tr. 177-184],[7] completed by his girlfriend Tina Ball on August 10, 2005. The Plaintiff does not provide any citations or quotations from the report, but cites the Court generally to Ms. Ball's observations that the Plaintiff no longer reads and requires prompting for even simple tasks like bathing or doing

---

[5] **Q**: Do you help her [deliver papers]? **A**: Sometimes but somebody's got to be home to take care of the kids so. [Tr. 372].
  **Q**: You mentioned that, that you were let go. Were you having any problems doing that work? **A**: No. . . . It wasn't like that. They were just downsizing. [Tr. 373].
  **Q**: How often do you get out of the house? How many days a week? **A**: I'm, I go outside quite a bit. Either that or when the kids are all in school I'll go out shopping with Tina. [Thereafter, Plaintiff testified he leaves his property two or three days per week.] [Tr. 376].
  Contra, **Q**: Can you give me an example or two of everyday life of something you would have trouble paying attention with? **A**: Well, I throw laundry in and forget about it and it sit, sit maybe [in the] washer and sour. [Tr. 374].

[6] **Q**: The last job you held was that as a carpenter building those log cabins? **A**: Yes, Your Honor. **Q**: And why did you leave that job? **A**: I couldn't really tell you. It is just I couldn't deal with it any more. **Q**: Well, you told me the last time you left because of some cut backs? **A**: That's a possibility. I really don't remember the reason why I left. [Tr. 391].
  **Q**: Do you ever help her deliver the newspapers? **A**: No. [Tr. 394].
  **Q**: Do you live in – **A**: In about the last year. All I do is sit home and watch TV. I can't sleep. My mind is racing back and forth. [Tr. 394].
  **Q**: How often do you leave the house? **A**: Very rarely. [Tr. 398]

[7] The writing on the copy of this report in the record is very faint, though it is largely legible.

18

laundry. [Doc. 14 at 20].  The Court has reviewed Ms. Ball's comments, but her observations are inconsistent with the evidence in the record.  For example, in contrast to Ms. Ball's observation about the Plaintiff's self-care habits, his appearance was consistently observed as normal by evaluators at Peninsula, [Tr. 289, 291, 293], and Mr. Porter observed that the Plaintiff was "neat, clean, and appropriately dressed," [Tr. 321].  While the Plaintiff argues that "Ms. Ball stated he is no longer interested in reading," [Doc. 14 at 20], Ms. Ball also stated that the Plaintiff reads about a book a month, [Tr. 181].  Ms. Ball's observations in the report do not support finding that the ALJ erred in his credibility determination.

In sum, after reviewing the record as a whole including Ms. Ball's statements, the Court finds that the ALJ did not err in his credibility determination, and the Court will not disturb the credibility finding.[8]  The Court finds that the ALJ's credibility determination is supported by substantial evidence and was properly explained by the ALJ.

---

[8]In the final portion of his argument regarding credibility, the Plaintiff remarked that the ALJ erred by observing that the Plaintiff had shown improvement in recent records from Peninsula.  The Plaintiff states, "If this were a true improvement, the Decision should have discussed Plaintiff's symptoms from the previous years and explained why Plaintiff was not eligible for a closed period of benefits." [Doc. 14 at 21-22].  To the extent this statement is meant to constitute an additional allegation of error, the Court finds that it is not well-taken.  The Plaintiff has not cited any case law, statutory provision, or portions of the record in support of this statement, and the Court finds that this skeletal argument is waived, see El-Moussa v. Holder, 569 F.3d 250, 257 (6th Cir. 2009) ("It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.") (alteration in original) (internal quotation marks omitted).

## V. CONCLUSION

Based upon the foregoing, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, with certain delineated nonexertional limitations. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[9] that Plaintiff's Motion For Summary Judgment **[Doc. 13]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[9]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).